**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| **CONSTRUCTURE, INC.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **No.: 04-1820C** |
| **vs.** | ) | |
| | ) | **Judge: Mary Ellen Coster Williams** |
| **UNITED STATES OF AMERICA,** | ) | |
| **DEPARTMENT OF THE NAVY,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

**FIRST AMENDED COMPLAINT**

The Plaintiff, ConStructure, Inc. (hereinafter "ConStructure") complains of the Defendant herein as follows:

**JURISDICTIONAL ALLEGATIONS**

1. ConStructure is a corporation organized and existing under the laws of the State of South Carolina and at all times relevant herein was in the business of performing government construction contracts. ConStructure is a small business as defined by the Small Business Administration.

2. The Defendant, the United States of America, is a Defendant in this action by virtue of the actions and omissions of its agency and instrumentality, the United States Department of the Navy (hereinafter the "Navy").

3. This case involves a dispute over the assessment of liquidated damages and the termination for default of ConStructure under Contract No. N62467-03-C-6544 (hereinafter the "Contract"), Replace Air Handling Units at 3rd and Weapons Batt, MCRD, Parris Island, South Carolina.

4. This Court has jurisdiction over this matter pursuant to 41 U.S.C. § 609.

5. ConStructure has timely and properly pursued and exhausted all administrative remedies prior to instituting this action

**GENERAL FACTUAL ALLEGATION**

6. The Navy awarded the Contract to ConStructure, on or around September 19, 2003. The base bid of the Contract generally required ConStructure to install new air handling units in nine (9) barracks buildings and perform associated work including installation of ductwork and sheetrock. The Contract also included an option to perform the work on six (6) additional barracks buildings. The Navy awarded both the base bid and the option for a total Contract amount of $6,855,112.00. The original completion date was December 12, 2004.

7. The Contract includes liquidated damages of $1,550.00 per day per phase for the base bid, Phases 3 thru 12, and $1,450.00 per day per phase for Alternate Item 0002 (the option), Phases 3A thru 9A.

8. The Contract includes FAR 52.249-10, Default (Fixed-Priced Construction)(April 1984).

9. During the course of performance of the Contract, ConStructure identified problems with the drawings and specifications provided by the Navy, and submitted a total of twenty-nine (29) Requests for Equitable Adjustments (REA's) as a result of the defective drawings, specifications, and direction by the Navy. The REA's requested additional compensation totaling over $200,000.00 and an extension until October 21, 2005.

10. On January 29, 2004, the Navy issued Modification P00001 adding Web Based Construction Management (WEBCM) requirements to the Contract. ConStructure refused to sign the Modification P00001 and returned it to the Navy because it did not include any compensation

for the additional costs that would be incurred as a result of the change. Despite the fact that Modification P00001 was returned unsigned, the Navy insisted that the WEBCM requirements be complied with by ConStructure.

11. On January 30, 2004, the Navy issued Unilateral Modification P00002 revising the demolition work required by the Contract. Unilateral Modification P00002 increased the Contract amount by $83,200.00, but did not extend the performance period.

12. ConStructure is entitled to an extension of the Contract performance period as a result of the additional requirements of Unilateral Modification P00002.

13. Bilateral Modification P00003 revised Item 00002 of the Base Bid, Partnering. There is no Modification P00004.

14. On or around August 20, 2004, the Navy issued proposed Bilateral Modification P00005 to definitize Unilateral Modification P00002. Proposed Modification P00005 added an additional $38,877.73 to the Contract amount and extended the Contract by 131 days, to April 22, 2005. ConStructure returned proposed Modification P00005 to the Navy unsigned because it did not fully and completely compensate ConStructure for the additional costs and time associated with Unilateral Modification P00002.

15. On October 1, 2004, the Navy issued Unilateral Modification P00006 to compensate ConStructure for additional costs and time that the Navy determined to be appropriate for REA's 3, 4, 6 and 7. Unilateral Modification P00006 increased the Contract amount by $8,278.00 and extended the performance period by nine (9) days, until May 1, 2005.

16. ConStructure did not have a contractual obligation to perform any of the work identified in REA's 3, 4, 6 and 7 until the Navy issued Unilateral Modification P00006.

17. ConStructure was entitled to an extension in the Contract performance period from the time ConStructure was contractually obligated to perform the additional work identified in REA's 3, 4, 6 and 7 for the time necessary to complete the work plus any delays from the impact of the work identified in REA's 3, 4, 6 and 7.

18. On October 5, 2004 the Navy issued a Cure Notice to ConStructure. The Cure Notice alleged that it no longer appeared possible to complete the Contract on time and demanded a response within ten (10) days demonstrating a substantive plan to meet the Contract completion date.

19. ConStructure responded to the Cure Notice by letter dated October 14, 2004. ConStructure requested an extension until October 21, 2005 due to the changes by the Navy, but also advised that with acceleration the Contract could be completed by the Navy's imposed completion date.

20. On or around November 15, 2004 the Navy notified ConStructure that the Navy was withholding $1,160,800.00 for "potential liquidated damages."

21. On December 3, 2004, the Navy issued Unilateral Modification P00007 to compensate ConStructure for additional costs and time that the Navy determined to be appropriate for REA's 17, 20, 21, 22, 23 and 24. Unilateral Modification P00007 increased the Contract amount by $23,015.00 and extended the Contract performance period by 5 days, to May 6, 2005.

22. ConStructure did not have a contractual obligation to perform any of the work identified in REA's 17, 20, 21, 22, 23 and 24 until the Navy issued Unilateral Modification P00007.

23. ConStructure was entitled to an extension in the Contract performance period from the time

ConStructure was contractually obligated to perform the additional work identified in REA's 17, 20, 21, 22, 23 and 24 for the time necessary to complete the work plus any delays from the impact of the work identified in REA's 17, 20, 21, 22, 23 and 24.

24. On December 3, 2004, the Navy issued a final contracting officer's decision (Attachment 1 hereto, Unilateral Modification No. P00008) terminating the Contract for default as a result of ConStructure's alleged failure to maintain progress.

25. At the time of the termination for default, ConStructure had completed four (4) of the barracks and was over 95% complete with a fifth barracks.

26. Upon information and belief, the Navy failed to follow the requirements of FAR 49.402-3 (Procedure for Default) and FAR 52.249-10 (Default).

27. The termination for default by the Navy was improper and without cause.

28. The assessment and withholding of liquidated damages were improper and without cause.

29. The Navy cannot state what specific dates ConStructure was the sole cause of any alleged delays to the Contract.

30. Any delays to the Contract allegedly caused by ConStructure are concurrent with delays to the Contract caused by the Navy.

31. ConStructure is entitled to an equitable adjustment for additional costs and for additional time to complete changes to the Contract by the Navy.

32. The Navy failed to conduct any meaningful analysis of the impact and delays on the Contract caused by the additional work directed in the unilateral modifications issued to ConStructure.

33. On January 24, 2005, Constructure submitted a properly certified claim to the Contracting Officer demanding payment of $2,088,814.00, plus interest, as a result of the Navy's breach

of contract, wrongful termination, failure to fully compensate Constructure for directed changes and unilateral modifications, failure to extend the contract as a result of directed changes and unilateral modifications, failure to pay for directed changes, delays and disruptions caused by the government's actions and in-actions, defective plans and specifications, and for remission of liquidated damages and monies wrongfully withheld by the Navy.

34. The Contracting Officer failed to issue a contracting officer's decision on the claim within 60 days, therefore, the claim is deemed denied.

**WHEREFORE**, ConStructure prays for judgment against the Navy finding that: (1) the assessment of liquidated damages was improper and without cause, (2) ConStructure is entitled to remission of liquidated damages, (3) the termination for default was improper and without cause, (4) the Navy failed to follow the proper procedures for termination for default, (5) the termination for default be rescinded and converted to a termination for convenience, (6) ConStructure is entitled to all damages incurred as a result of the wrongful termination for default, and (7) Constructure is entitled to damages as set forth in its claim, attorney's fees, interest as may be applicable, and for such other and further relief as this Court deems just and proper.

**PEDERSEN & SCOTT, P.C.**

s/ William A. Scott

William A. Scott, Esquire
775 St. Andrews Blvd.
Charleston, South Carolina 29407
(843) 556-5656

Dated this 10th day of August, 2005.